In re the MARRIAGE OF Elnora
R. THIELGES, and Brian
Thielges.

Upon the Petition of Elnora
R. Thielges, Petitioner–
Appellee,

And Concerning Brian Thielges,
Respondent–Appellant.

No. 00–01.

Court of Appeals of Iowa.

Dec. 22, 2000.

Roger J. Kuhle, Danielle I. Foster–Smith of Law Office of Roger J. Kuhle, West Des Moines, for appellant.

David L. Jungmann, Greenfield, for appellee.

Heard by STREIT, P.J., and VOGEL and MILLER, JJ.

STREIT, P.J.

A father complains the mother of his children is taking them back to his home state of North Dakota. The district court modified the parties' dissolution decree to allow this. We affirm.

### I. Background Facts & Proceedings.

Brian and Elnora Thielges's fourteen-year marriage was dissolved in April 1998. They have three children: Angela (May 1985), Nicole (August 1988), and Trenton (October 1990). Pursuant to a 1998 dissolution decree, Brian and Elnora have joint legal custody of their children with Elnora having primary physical care. The decree restricted relocation of the children by ordering: "The children shall remain in the Adair school district. In the event either party moves out of the Adair school district, such a move shall constitute a substantial change in circumstances regarding

modification of custody of the minor children."

In January 1999 Brian filed a petition asking the court to place the children in his physical care. Elnora asked the court to decrease Brian's visitation and cancel the decree's relocation restriction. Before the modification trial was completed, Brian agreed to dismiss his petition, pay more child support, and decrease his visitation. Elnora agreed to dismiss her counterclaim concerning the decree's relocation restriction. The court approved their July 1999 stipulation and modified the decree accordingly.

In November 1999 Elnora filed a petition asking the court to modify the decree's relocation and visitation provisions so she could move to North Dakota with the children. Brian asked the court to place the children in his physical care. After the trial the court removed the decree's relocation restriction, allowed Elnora and the children to move, and altered Brian's visitation schedule. The court also ordered Brian to pay $3500 of Elnora's attorney fees. Brian appeals.

## II. Physical Care & Visitation.

Brian claims the district court should have placed Angela, Nicole, and Trenton in his physical care or, at a minimum, barred Elnora from moving them to North Dakota. He argues the court placed improper burdens of proof on the parties. He also argues the court failed to address Angela's wishes regarding where she wanted to live. We review de novo. *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa App.1996).

### A. Burdens of Proof.

■ The court allocated the burdens of proof in this case in accordance with Brian and Elnora's respective modification requests. Citing *In re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983), the court stated Brian bore the burden of proof on the physical care issue and Elnora bore the burden of proof on the relocation/visitation issue.

■ We agree with the court's allocation of the burdens of proof between Brian and Elnora. Brian has asked the parties' children be placed in his physical care. He must prove, by a preponderance of the evidence, a substantial change in circumstances justifying his requested modification. *See Frederici*, 338 N.W.2d at 158. He must also prove he has an ability to minister more effectively to the children's well-being. *See id.* His heavy burden "stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons." *See id.* Elnora has asked the decree's relocation restriction be cancelled so the children can move to North Dakota with her. Elnora also has asked Brian's visitation schedule be altered to accommodate the move. She must prove a change in circumstances justifying her requested modifications. *See In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa App. 1985). Her burden is less demanding than Brian's given "a much less extensive change of circumstances need be shown in visitation right cases." *See id.*

Given these standards, Brian contends he has been improperly saddled with the heavier burden in this case. His arguments are based on the decree's relocation restriction and section 598.21(8A), a provision of the Iowa Code applicable to long-distance relocations. We will address his arguments before we determine whether he and Elnora have met their respective burdens of proof.

### 1. Relocation Restriction & Section 598.21(8A).

■ Brian first argues Elnora must prove moving the children to North Dakota is in their best interests because she is seeking to undo the decree's relocation restriction. "The controlling consideration in child custody cases is always what is in the best interests of the children." *In re Marriage of Swenka*, 576 N.W.2d 615, 616 (Iowa App.1998); *see also* Iowa R.App.P.

14(f)(15). This consideration is interwoven into the modification standards applicable to such cases. *Frederici*, 338 N.W.2d at 158 ("To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change."); *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa App.1994) ("The parent seeking to modify child visitation provisions of a dissolution decree must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children."). However, to the extent Brian is arguing Elnora's burden of proof is greater than the burden allocated to her, his argument falls short. *Jerome*, on which Brian heavily relies, was a modification case involving a relocation restriction in which parents with a dissolved marriage sought changes similar to those requested by Brian and Elnora. *See Jerome*, 378 N.W.2d at 303. In that case, we allocated the burdens between the parents just as we have in this case: The parent seeking to change who had physical care of the parties' children was required to prove a substantial change of circumstances and an ability to minister more effectively to the children's well-being while the parent seeking to move the children out of Iowa was required to prove only a change in circumstances justifying a change in visitation. *Id.* at 304–05.

■ Requiring Brian to bear the heavier burden is appropriate even though Elnora is the party seeking to move the parties' children to North Dakota. Although the dissolution decree contains a relocation restriction, it also provides Elnora shall be responsible for the physical care of the children. "[O]ur case law places greater importance on the stability of the relationship between [children] and [their] primary caregiver [than on] the physical setting of the [children]." *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa App.1998) (citations omitted). Brian is seeking the most significant modification in this case—a modification that would remove the parties' children from Elnora's physical care and place them in his physical care. Accordingly, Brian should also bear the heavier burden in this case.

■ Brian also argues he has been improperly saddled with the heavier burden given the legislature's enactment of section 598.21(8A). *See* 1997 Iowa Acts ch. 175, § 190. Specifically, he argues section 598.21(8A) changes the law applicable to custody modification requests triggered by one parent's long-distance relocation. The statute reads, in part, as follows:

> If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances. If the court determines that the relocation is a substantial change in circumstances, the court shall modify the custody order to, at a minimum, preserve, as nearly as possible, the existing relationship between the minor child and the nonrelocating parent. If modified, the order may include a provision for extended visitation during summer vacations and school breaks and scheduled telephone contact between the nonrelocating parent and the minor child.

Iowa Code § 598.21(8A) (1999).

Section 598.21(8A) changed at least one facet of the law applicable to custody modification requests. Prior to section 598.21(8A), "Iowa courts had historically recognized society's mobility and had not fixed or changed custody based on one party's move from an area where both parents resided absent other circumstances." *In re Marriage of Crotty*, 584

N.W.2d 714, 717 (Iowa App.1998) (citing *In re Marriage of Vrban*, 359 N.W.2d 420, 425 (Iowa 1984), and *Frederici*, 338 N.W.2d at 161). After section 598.21(8A), a court may consider a move of 150 miles or more, by itself, to be a substantial change in circumstances. *Crotty*, 584 N.W.2d at 717. Thus, the statute tempers the ability of a parent who is responsible for his or her children's physical care to relocate. *Williams*, 589 N.W.2d at 762.

Section 598.21(8A) does not change the burdens of proof applicable to custody modification requests. As is clear on its face, section 598.21(8A) does not eliminate the requirement a parent requesting either a visitation modification or physical-care modification must prove the requisite change in circumstances. Nor does it eliminate the requirement a parent requesting a physical-care modification must also prove he or she has the ability to minister more effectively to the well-being of the parties' children. After stating "the court shall modify the custody order" if the court determines a move of 150 miles or more is a substantial change in circumstances, section 598.21(8A) states "[i]f modified, the order may include a provision for extended visitation during summer vacations and school breaks and scheduled telephone contact between the nonrelocating parent and the minor child." Thus, if a party proves only a substantial change in circumstances, section 598 .21(8A) explicitly contemplates only a visitation modification. This does not mean section 598.21(8A) is not applicable to physical-care modification requests. Rather, it confirms the statute is consistent with modification cases like *Frederici* that require a parent requesting a physical-care modification to prove a substantial change of circumstances and an ability to minister more effectively to his or her children's well-being. In other words, by implication section 598.21(8A) preserves the second element of the burden of proof applicable to physical-care modification requests. The statute does not lighten Brian's burden.

In summary, Brian bears the heavier burden of proof in this case despite the decree's relocation restriction and section 598.21(8A). We now turn to the application of Brian and Elnora's respective burdens of proof.

*2. Application.*

We, like the district court, find Brian has not met both elements of his heavy burden of proof. We find Elnora has met her burden of proof.

As we stated previously, Brian must prove a substantial change of circumstances supporting his request we place the parties' children in his physical care. *See Frederici*, 338 N.W.2d at 158. The dissolution decree states the following: "In the event either party moves out of the Adair school district, such a move shall constitute a substantial change in circumstances regarding modification of custody of the minor children." A district court, in a dissolution decree or other custody order, certainly can describe the past and present circumstances underlying the various aspects of its custody award. We *strongly* disapprove, however, of custody provisions, whether stipulated by the parties or mandated by the court, that predetermine what future circumstances will warrant a future modification. A court should not try to predict the future for families, nor should it try to limit or control their actions by such provisions. *Cf. Hovater v. Hovater*, 577 So.2d 461, 463 (Ala.Civ.App.1990) ("We find, however, the custodial reversionary clause in this instance to be of no effect because it is premised on a mere speculation of what the best interests of the children may be at a future date."); *Bell v. Bell*, 572 So.2d 841, 845 (Miss.1990) ("We regard it [a] particular folly to decree in advance—at a time when one child may be twelve and another six—that it will be in their best interest to remain in a given community until they become adults. This is simply something that no individual and certainly no court can know."); *Wilson v. Wilson*, 12

Va.App. 1251, 408 S.E.2d 576, 579 (1991) ("A move from Nashville to another location at some time in the future may prove to be in the son's best interests. However, this cannot be determined until the move is contemplated and all the circumstances associated with it are known."). Such provisions, besides misleading the parents, seem to provide that one event alone will mandate a change of physical care. This is an erroneous notion. Any such change of circumstances must be weighed with all the other relevant conditions affecting physical care. Accordingly, the custody provision stating a move out of the Adair school district "shall constitute a substantial change of circumstances" does not dictate the result in this case.

 Nonetheless, Brian has proven a substantial change of circumstances supporting his modification request. Pursuant to the dissolution decree and the July 1999 modification decree, Brian has visitation with the parties' children on alternate weekends and one weekday evening. Moving the children roughly 470 miles away to North Dakota would undoubtedly disrupt Brian's visitation schedule and limit his access to them. Applying section 598.21(8A), we find Brian has proven a substantial change in circumstances that was not contemplated by the district court, is permanent, and relates to the welfare of the children. *See Frederici,* 338 N.W.2d at 158.

 Brian must also prove, however, he has an ability to minister more effectively to the well-being of the parties' children. *See id.* At trial, Brian suggested he is the parent who, through word and deed, can provide superior care for the children. At most, the record shows Brian and Elnora are both fallible human beings who can provide the same level of care for their children. Brian has not met his heavy burden of proof; we will not place the children in his physical care.

1. Significantly, one of section 598.21(8A)'s

 Elnora has met her burden of proof. To justify her modification request concerning the dissolution decree's relocation and visitation provisions, Elnora must prove there has been a change in circumstances since the decree. *See Jerome,* 378 N.W.2d at 305. Her burden is less demanding than Brian's. *See id.* Elnora is requesting a modification so she can move to Ellendale, North Dakota, with her children. Her desire to move is predicated on valid reasons: she is originally from the Ellendale area and has relatives there, including her parents; she is a nurse and her infirm parents need her assistance; and she can get a "fresh start" there. *Cf. id.* ("The Iowa courts in recent years have recognized how mobile our society is and have been reluctant to limit a custodial parent to a geographic area where there is evidence that the custodial parent has valid economic reasons for moving and the move is not predicated on an attempt to limit visitation of the noncustodial parent.") (citations omitted). It is also in the children's best interests to continue living with Elnora as she has been their primary caregiver since the parties' dissolution of marriage. *See Williams,* 589 N.W.2d at 762. Elnora's requested modification is justified.

 In reaching this conclusion, we have not ignored chapter 598's supposition it is generally in children's best interests to have the opportunity for maximum continuous physical and emotional contact with both of their parents. *See* Iowa Code §§ 598.1(1), 598.41(1). Such contact can be assured by means other than a traditional, alternating-weekends visitation schedule. For example, section 598.21(8A) states that when a court determines a long-distance relocation constitutes a substantial change in circumstances, the court can modify the custody order at issue by granting the nonrelocating parent "extended visitation during summer vacations and school breaks and scheduled telephone contact." [1]

primary purposes is "to assure maximum

The district court fashioned such a solution in this case: The court modified Brian's visitation schedule by granting him eight weeks of visitation during the summer, visitation during half of the winter school break, visitation during alternating Thanksgiving and spring breaks, reasonable visitation whenever he visits North Dakota or whenever Elnora visits Iowa, and liberal telephone and Internet communications. These changes are appropriate and fair given Brian, who also has many relatives in the Ellendale area, travels to North Dakota approximately eight to twelve times every year. We find the parties' children have been assured the opportunity for maximum continuous physical and emotional contact with both of their parents and affirm the district court.

### B. Preference.

Alternatively, Brian claims we should honor Angela's wishes regarding where she wants to live. Angela has stated she would rather live in Iowa than North Dakota. "When a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling may be considered by the court, with other relevant factors, in determining child custody rights." *In re Marriage of Hunt,* 476 N.W.2d 99, 101 (Iowa App.1991). A child's preference "is entitled to less weight in a modification action than would be given in an original custody proceeding." *Id.*

We give Angela's preference some weight, but do not defer to her. At the time of trial, Angela was fourteen. Her counselor testified she is "able to take on just about anything." On the other hand, Elnora testified Angela vacillates on where

she would prefer to live. The record also suggests Angela's preference has more to do with her Iowa friends and school than it does with Brian and Elnora. Given these circumstances, we will not separate Angela from her siblings and Elnora. We affirm the district court.

### III. Control of Trial.

Brian also claims the district court should have allowed him to present evidence of matters that antedated the July 1999 stipulation and modification decree. We review for an abuse of discretion. *Cf. In re Marriage of Rebouche,* 587 N.W.2d 795, 798 (Iowa App.1998) ("[W]e afford trial judges wide discretion over the course and conduct of a trial."); *In re Marriage of Ihle,* 577 N.W.2d 64, 67 (Iowa App.1998) ("It is generally recognized that matters relating to the course and conduct of a trial, not regulated by statute or rule, are within the discretion of the trial judge.").

The court's decision to exclude the aforementioned evidence followed Elnora's filing of a motion in limine. In her motion, Elnora stated Brian's witness and exhibit list included fifty-eight witnesses and forty-seven exhibits. She argued Brian had an opportunity to present this evidence at the partial trial on the parties' first round of modification requests.[2] The court directed Brian and Elnora to limit their evidence to matters arising after the July 1999 modification and also initially limited them to six witnesses apiece.[3]

The court acted within its broad discretion. One of the primary purposes of the Iowa Rules of Evidence is to "secure fairness in ... elimination of unjustifiable ex-

---

contact between the child and the non-custodial parent." *Williams,* 589 N.W.2d at 762; *see also In re Marriage of Mayfield,* 577 N.W.2d 872, 874 (Iowa App.1998) ("[Section 598.21(8A) ] is compatible with other legislative changes in the past decade focusing on the opportunity for substantial parental involvement in a child's life by both parents even when there has been a marriage dissolution.").

**2.** When Elnora and Brian entered their July 1999 stipulation, Brian's witnesses had testified at the trial but Elnora's witnesses had not.

**3.** The court ultimately allowed Brian to call two additional witnesses.

pense and delay." Iowa R.Evid. 102. Accordingly, pursuant to rule 403 a court can exclude otherwise relevant and admissible evidence if the evidence's "probative value is substantially outweighed ... by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Similarly, rule 611 provides a "court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... avoid needless consumption of time." Given these rules, where one party was asking to call fifty-eight witnesses, the court was not obligated to surrender the hall for such a marathon production. Requiring it to do so would have resulted in the absurd surrendering of its inherent power to control its courtroom.

Of course, arbitrary and inflexible time limits are disfavored. A court "should impose time limits only when necessary, after making an enlightened analysis of all available information from the parties." *Ihle*, 577 N.W.2d at 68. "[I]t is equally incumbent upon the party seeking additional time to present evidence establishing prejudice." *Id.* at 69. If a party does this adequately, it will alert the court to the particular evidence being sought and will allow the court to make an informed and specific ruling on the evidence.

In this case, Brian has not clearly articulated why the court's decision to exclude evidence and limit the number of witnesses was purportedly an abuse of its discretion.

The court imposed the evidentiary limitations only after hearing from both sides. Brian has not shown that he identified the nature and importance of the particular evidence he believed was relevant to the pending modification action. Nor has he explained how he was prejudiced by the evidentiary limitations. Finding no abuse of discretion, we affirm the district court.

### *IV. Attorney Fees.*

Finally, Brian requests we order Elnora to pay the attorney fees and costs he incurred at trial and on appeal. Elnora, who was awarded $3500 for attorney fees at trial, requests we order Brian to pay the attorney fees and costs she has incurred on appeal. In evaluating such requests, we consider the needs of the requesting party, the ability of the other party to pay, and whether the requesting party was obligated to defend the district court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). In light of these factors, we deny Brian's request and direct him to pay $1000 of Elnora's attorney fees.

We affirm the district court.

**AFFIRMED.**